UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ULRICH MEDICAL USA, INC., | ) | |
|---|---|---|
| Plaintiff/Counterclaim Defendant, | ) | |
| vs. | ) | No. 4: 15 CV 686 RWS |
| MATT DICKMAN, and AMEDICA CORPORATION, | ) | |
| Defendants/Counterclaim Plaintiffs. | ) | |

**MEMORANDUM AND ORDER**

This matter is before me on Ulrich Medical USA, Inc.'s ("Ulrich") Motion to Dismiss Matt Dickman's ("Dickman") and Amedica Corporation's ("Amedica") counterclaims for malicious prosecution and abuse of process in this breach of a covenant not to compete action. Because Amedica's malicious prosecution claim is premature and its abuse of process claim fails to state a claim, I will grant Ulrich's motion to dismiss both counterclaims.

**I.  Background**

This motion arises out of an action to enforce an Employment Agreement (the "Employment Agreement") and an Executive Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Non-Compete Agreement"). Ulrich filed claims against Dickman for breach of a covenant not to compete (Count I) and breach of fiduciary duty (Count II). Ulrich also sued both Dickman and Amedica for a threatened misappropriation/inevitable disclosure of trade secrets (Count III). Additionally, Ulrich sued Amedica for tortious interference (Count IV).

Ulrich is a spinal implant business that "designs, tests, manufactures and sells medical devises and surgical instruments primarily focused on surgical spinal implants." [Doc. #2, Pet. ¶9 at 3] Dickman worked for Ulrich as an Area Sales Director. As a condition of his employment, Dickman signed the Employment Agreement, dated April 30, 2014, and the Non-Compete Agreement, dated May 2, 2014. The latter contains an express "Covenant Not to Compete" prohibiting Dickman, for 12 months after termination, from engaging "in any business which is in competition with any products sold by [Ulrich] . . . in any geographic region within the United States of America in which [Dickman] conducted business on behalf of [Ulrich] during his employment period with [Ulrich]." [Doc. #2, Pet. Ex. 1, Non-Compete Agreement ¶3(a)] In the event of a violation of the Covenant Not to Compete, the Non-Compete Agreement provides that Ulrich would be "entitled to obtain from any court of competent jurisdiction, specific performance, temporary, preliminary and permanent injunctive relief as well as damages." [Doc. #2, Pet. Ex. 1, Non-Compete Agreement ¶3(b)] The "Confidential Information" provision of the Non-Compete Agreement provides that Dickman shall not "directly or indirectly use or disclose to any third person, without the prior written consent of [Ulrich], any Confidential Information of [Ulrich]." [Doc. #2, Pet. Ex. 1, Non-Compete Agreement ¶2]

In his role as Area Sales Director, Dickman was entrusted with confidential information of Ulrich, including "Ulrich's research, products, pricing, surgeon list, customers, marketing strategies, product development, costs, margins and other business plans and customers' needs." [Doc. #2 Pet. ¶35 at 6] Dickman's sales territory included the following: Colorado, Arizona, Utah, New Mexico, Wyoming, Montana, Idaho, and El Paso, Texas. [Doc. #2 Pet. ¶29 at 5]

Dickman resigned his position as Area Sales Director with Ulrich on March 2, 2015. Dickman subsequently began working for Amedica in a sales capacity as Area Vice President of Sales. Ulrich alleges that Dickman is selling competing products in some of the same geographic areas as when he was employed by Ulrich and that it is "inevitable" that Dickman will use and disclose Ulrich's confidential information in performing work for Amedica.

On April 27, 2015, Ulrich filed this action in the Circuit Court of St. Louis County, Missouri. Dickman and Amedica removed the case to the U.S District Court for the Eastern District of Missouri on April 27, 2015. On April 28, 2015, Dickman and Amedica asserted counterclaims for malicious prosecution and abuse of process.

On May 19, 2015, Ulrich filed this motion to dismiss the counterclaims, arguing that Dickman and Amedica have failed to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

In ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the non-moving party. Fed. R. Civ. P. 12(b)(6); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007). The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, the non-moving party's factual allegations "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

### III. Analysis

#### A. Malicious Prosecution

The elements of a malicious prosecution claim are: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit. State ex rel Patrick O'Basuyi v. Vincent, 434 S.W.3d 517, 519 (Mo. 2014).

"Actions in malicious prosecution have never been favorites of the law." Holley v. Caulfield, 49 S.W.3d 747, 750 (Mo. Ct. App. 2001). As a result, Missouri courts require strict compliance with these elements, including the third element, requiring "termination of the suit in the party's favor." State ex rel O'Basuyi, 434 S.W.3d at 519–520. Requiring the prior suit to terminate in favor of the opposing party "avoids the needless filing of suit by an opposing party who is not successful in the initial action." Id. at 519. Furthermore, "[p]ermitting malicious [prosecution] counterclaims to be joined and tried with the underlying action has the potential to . . . discourage[] [parties] from bringing valid claims and also risks undue prejudice by allowing the opposing party to bring in evidence irrelevant to the first party's claim." Id.

In the present case, the third element has not been satisfied. Dickman and Amedica prematurely base their malicious prosecution counterclaims on Ulrich's present claim. Dickman and Amedica nonetheless contend that their malicious prosecution counterclaims are proper under federal procedural law because each "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." [Doc. #16, Defs.' Resp. to Pl.'s Mot. to Dismiss Countercls. at 2–3] The Missouri Supreme Court rejected a similar argument, based on state law. Zickel v. Knell, 357 Mo. 678, 681 (1948). In Zickel v. Knell, the Court found that a

4

malicious prosecution counterclaim was properly dismissed because "no cause of action for malicious prosecution for the filing of [the current] action by plaintiff [had] existed . . . or could ever [have] accrue[d] to defendants until [the] suit [was] terminated in their favor." Id. The same analysis applies to the federal procedural argument made by Dickman and Amedica.

Finally, Dickman and Amedica argue the malicious prosecution counterclaims "are putting Ulrich and this Court on notice of their intent to pursue malicious prosecution once Ulrich's allegations are resolved in Defendants' favor." [Doc. #16, Defs.' Resp. to Pl.'s Mot. to Dismiss Countercls. at 3] The Missouri Supreme Court has rejected provisional filing of malicious prosecution claims. State ex rel O'Basuyi, 434 S.W.3d at 521.

As a result, I will grant Ulrich's motion to dismiss Dickman's and Amedica's malicious prosecution counterclaims.

### B. Abuse of Process

The elements of an abuse of process claim are: (1) an illegal, improper, perverted use of the process that is not warranted or authorized; (2) an improper purpose in exercising such illegal, improper or perverted use of process; and (3) resulting damages. Guirl v. Guirl, 708 S.W.2d 239, 245 (Mo. Ct. App. 1986).

In the present case Dickman and Amedica failed to demonstrate the first element. First, Ulrich's *filing* of the petition is not grounds for an abuse of process claim. Ulrich has a contractual right to enforce the Non-Compete Agreement. Such an action employs the judicial process to accomplish an end intended by law. Furthermore, *maintaining* the suit at this point of the litigation is neither unwarranted nor unauthorized. Maintaining a cause of action can constitute an abuse of process where further litigation "could not have accomplished any purpose contained in the petition." Guirl, 708 S.W.2d at 246. In Guirl, the two forms of relief sought,

namely to remove the defendant as a trustee and permission to sell the defendant's shares of stock, could not be accomplished by further litigation because the defendant tendered an amount of money equivalent to the sale of defendant's shares and the plaintiff provided no ground upon which the defendant could have been removed as a trustee. Id. Guirl is factually distinguishable from the current action.

In the present case, Ulrich seeks the following relief: an injunction to enjoin Dickman from using Ulrich's confidential information, an injunction to enjoin Dickman from violating the Covenant Not to Compete, monetary damages, punitive damages, an injunction to enjoin Dickman from using or disclosing Ulrich's confidential information and from engaging in any corporate opportunity diverted from Ulrich, return of any of Ulrich's property in Dickman's or Amedica's possession, an accounting, and an injunction to enjoin Dickman and Amedica from disclosing Ulrich's confidential information/trade secrets to any person. Unlike Guirl, where no further relief could be obtained, here, neither Dickman nor Amedica has tendered any form of requested relief to Ulrich. Further litigation may accomplish the purpose stated in Ulrich's complaint, and therefore, maintaining the suit is authorized by law.

Any ulterior or bad motive for the pursuit of the claim is not relevant and does not constitute an abuse of process. Krakover v. Mazur, 48 F.3d 341, 344 (8th Cir. 1995). Even a suit filed with bad intentions will not support an action for abuse of process. Moffett v. Commerce Trust Co., 283 S.W.2d 591, 599 (Mo. 1955).

In the present case, Dickman and Amedica allege that Ulrich brought the underlying action based on improper purposes, namely, "[i]nterference with contractual relationships between Amedica and Dickman; [i]nterference with Dickman's right and ability to engage in employment with persons or entities other than Ulrich; [r]evenge upon Dickman and others for

6

terminating his employment with Ulrich." [Doc. #4, #5, Defs.' Answers to Compl.]  Even taking these conclusory statements as true, at most they allege that Ulrich had an ulterior motive in seeking relief, which does not constitute abuse of process.

As a result, I will grant Ulrich's motion to dismiss Dickman's and Amedica's abuse of process counterclaims.

Accordingly,

**IT IS HEREBY ORDERED that** Plaintiff Ulrich Medical USA, Inc.'s Motion to Dismiss Defendant Matt Dickman's and Defendant Amedica Corporation's Counterclaims for Malicious Prosecution and Abuse of Process #[10] is **GRANTED.**

                                                  RODNEY W. SIPPEL
                                                  UNITED STATES DISTRICT JUDGE

Dated this 8th day of October, 2015.